## MILLER v. SOUTHERN PAC. CO.

No. 5033 Decided May 3, 1933. (21 P. [2d] 865)

*Bagley, Judd & Ray,* of Salt Lake City, for appellant.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for respondent.

MOFFAT, Justice.

Plaintiff was injured while employed as a fireman by the defendant company. This action was brought to recover for his injuries. Plaintiff had judgment. Defendant ap-

peals. The assignments of error are numerous (one hundred and two in number). The assignments may be grouped into five classes: (1) Those which relate to the admission and rejection of evidence (eight in number); (2) those which relate to the refusal of the trial court to instruct the jury as requested by the defendant (fourteen in number); (3) those which relate to the instructions given to the jury by the court (seventy-five in number); (4) those relating to re-reading or modifying instructions (four in number); and (5) the refusal of the court below to grant a new trial.

The assignments of error relating to the admission and rejection of evidence, those relating to re-reading or modifying instructions, except as covered by assignments relating to errors, in given and refused instructions, ■ and relating to the refusal to grant a motion for a new trial, are not argued, and hence are deemed waived, and will not be discussed in this opinion.

There is (substantial) agreement as to the existence of the following facts:

At the time of the alleged accident and injuries complained of, the defendant maintained a double-track railroad extending from San Francisco to and beyond Bay Shore, Cal. Bay Shore is about five miles south (in railroad parlance east) of San Francisco. A train in going over the tracks from San Francisco to Bay Shore passes through four tunnels which were numbered in order respectively 1, 2, 3, and 4. Tunnel No. 4 is near to and north of Bay Shore. The southerly end of tunnel No. 4 opens into the Bay Shore yards, which yards are extensive. Freight coming into San Francisco by railroad is collected in the Bay Shore yards. It is there classified and taken over the main line by switch engines to San Francisco.

Three hundred three feet north from the northerly portal of tunnel No. 4 is signal or semaphore No. 44. Tunnel No. 4 is 3,547 feet in length, 30 feet wide, and from 22.3 to 23.3 feet in height. Four hundred fifteen feet southerly from the south portal of tunnel No. 4 and in the Bay Shore yards,

signal or semaphore No. 24 is located. Two hundred fifteen feet southerly from signal No. 24 is a derail switch so arranged that when it is open an engine or train moving over the righthand or south-bound track would be derailed. About 540 feet southerly from the derail switch is a dwarf signal, and a short distance further southerly from the dwarf signal on the main line is the crossover switch, and track No. 51 connecting with the crossover track. By means of the switch and crossover track trains cross over the south-bound track of the main line to the north-bound track of the main line. It is through this swtich and crossover track that trains are moved from the Bay Shore yard to the north-bound track and thence over that track to San Francisco. About 700 feet southerly from the south portal of tunnel No. 4 in the Bay Shore yard the defendant maintained an interlocking tower from which signals and switches may be controlled in directing the movement of trains and cars over the track and switches within the Bay Shore yards as well as the trains that pass over the main line in the immediate vicinity of the Bay Shore yards. There is a dwarf signal and derail switch located on track 51 and controlled from the signal tower, for the purpose of directing and controlling the movement of trains, engines, or cars approaching the main line and crossover track from track 51.

On July 4, 1928, at 8 o'clock a. m. defendant's passenger train No. 78 left San Francisco bound for Los Angeles. One John Weir was the engineer and the plaintiff herein was the fireman on engine No. 4355 pulling passenger train No. 78. It left San Francisco and was running on time. It was due at Bay Shore at 8:09 a. m. As the train proceeded through tunnel No. 4 and when it had arrived at a point about 250 feet north of the southerly portal, the engineer saw that signal or semaphore No. 24 indicated stop. The engineer immediately applied the emergency brakes, but was unable to bring the train to a stop before it reached the derail switch located 630 feet south from the southerly portal of tunnel No. 4. As a result the engine was derailed and

after passing over the ties for some distance turned over on its side. When the engine turned over some of the steam pipes were broken. The steam emitted from the broken pipes burned the plaintiff about the face, neck, arms, body, and legs. The plaintiff was at once taken to a hospital where he was treated for his injuries. He remained at the hospital until November 14, 1928.

The evidence shows without conflict that passenger train No. 78 carried express destined for points outside of the state of California. On this appeal the defendant concedes that the plaintiff at the time he was injured was engaged in interstate commerce.

Immediately prior to the time of the accident a switch engine drawing six cars loaded with apricots approached the main line along switch 51. As this drag, as it is called, approached the main line, the dwarf signal showed red which means stop. The engineer on the switch engine whistled to the towerman for the main line. The whistle is a signal to the towerman. The whistle was given two minutes before No. 78 was due. The towerman gave the dwarf signal green which meant the drag could take the crossover to the main north-bound track. The drag was on the crossover when No. 78 came. Signal No. 24 was at stop and the derail on the south-bound main track was open to protect the movement of the apricot train or drag as it was passing over the south-bound main track.

It is established, in fact no one contends otherwise than, signal No. 24 was at stop when No. 78 approached the south portal of the tunnel. The signal at semaphore No. 24 was seen by both the fireman and engineer when the engineer was about 250 feet northerly from the south portal of Tunnel No. 4.

The principal issues raised by the pleadings and to which much of the evidence is directed relate to the position of the signal arms of semaphore No. 44 at the time of and immediately preceding the accident. Both parties to this controversy agree that signal No. 24 indicated stop, that the

derail was open, and that the crossover track and switch were being used by the apricot drag at the time train No. 78 arrived, and that with that situation prevailing signal No. 44 should have indicated to those in charge of passenger train No. 78 at the time No. 78 arrived at signal No. 44, to proceed with caution and be prepared to stop at signal No. 24.

Plaintiff charges in his complaint that at the time in question defendant was negligent, in that it caused signal No. 44 to show that the engine upon which he was riding could proceed safely into and through tunnel No. 4 when such signal should have indicated that the engine must proceed with caution and be prepared to stop at signal No. 24. Plaintiff also alleges in his complaint that (if signal No. 44 was at caution) defendant was negligent, in that its engineer who was in control of the engine upon which plaintiff was riding negligently failed to observe that signal No. 44 indicated that he should proceed with caution into and through tunnel No. 4. And, also, that the engineer failed to slacken the speed of the train so that it could be stopped at or near signal No. 24.

In its answer defendant denied negligence on its part. It also affirmatively alleged that at the time in question signal No. 44 indicated that the train upon which plaintiff was riding should proceed with caution into and through tunnel No. 4, and be prepared to stop at signal No. 24, and that signal No. 24 indicated stop; that the accident which caused plaintiff's injuries was due to his own negligence in failing to obey the rules of the defendant company, in that he failed to keep a constant and vigilant lookout, and failed to observe the postion of all signals including those at each end of tunnel No. 4, and likewise failed to communicate to the engineer, by their name, the positions and indications of such signals.

In support of the alleged negligence of the defendant, plaintiff and his witnesses testified in substance as follows:

The deposition of John Weir was read and received in evidence. Mr. Weir testified that he had been in the employ of the defendant company for about 39 years, during which time he had been a locomotive engineer for 30 years; that he was the engineer on train No. 78 at the time of the accident in which plaintiff was injured; that the tracks between tunnel No. 3 and tunnel No. 4 were not straight, but curved so that the engineer on a train approaching tunnel No. 4 from the north was on the inside of the curve; that there was an overhead viaduct bewteen tunnels Nos. 3 and 4; that one on the engineer's side could first see the signal just north of tunnel No. 4 as he approached it from the north when he was about 1,500 feet away from it; that as he approached signal No. 44 at the time in question that signal showed clear; that when he was probably 250 feet from the south end of tunnel No. 4 he saw signal No. 24 and it indicated stop; that he immediately applied the emergency brakes and did everything he could to stop the train, but was unable to do so until the train was derailed; that the engine ran along the ties for some distance and then turned over.

From the deposition of Kenneth C. Toney in substance the following evidence was received: That on July 4, 1928, he was working on a switch engine in the San Francisco and Bay Shore yards. At 8:09 o'clock on the morning of the accident he was just in front of the Bay Shore station, and about 400 feet from the east (south) portal of tunnel No. 4 and on the main line. With the engineer and some switchmen they were leaving Bay Shore going to San Francisco and had six cars filled with apricots. Switch engines use the main line between San Francisco and San Bruno irrespective of other trains but must take precaution to keep out of the other trains' way.

When they approached the main line (from switch 51), the engineman whistled to the towerman for the main line. At that time the dwarf signal was red, which meant they must not cross. The signal was given two minutes before No. 78 was due. In response to the signal the dwarf signal

went clear or green, which meant they could go across. The apricot train had not cleared the crossing when No. 78 arrived.

The following is a summary of the evidence offered by defendant:

Touching the manner in which the interlocking plant at Bay Shore was operated at the time in question, defendant called its assistant signal engineer. He testified that the interlocking plant at Bay Shore was an assemblage of switches and derails and signals grouped together and operated by a towerman from a tower; that the interlocking plant was maintained for the purpose of expediting traffic with safety; that the interlocking plant was operated by an electrical mechanism and each machine was operated with a lever by the towerman; that it was impossible to so operate the plant that signal No. 44 would show clear and at the same time signal No. 24 show stop; that when signal No. 24 was placed at stop, signal No. 44 was automatically placed at caution; that when signal No. 44 was at clear signal No. 24 must also be at clear and the derail must be closed; that when signal No. 24 indicated stop and the derail was open, signal No. 44 must indicate that a train approaching tunnel No. 4 from the north must proceed with caution and be prepared to stop at signal No. 24; that the interlocking plant was so constructed that after a train coming from the north going south reached a point 2,400 feet north of signal No. 44 the towerman could not so operate the levers as to change the signal or open the derail switch until after the train had passed through tunnel No. 4 and the Bay Shore yards; that while a train was moving on the south-bound main track within the Bay Shore yards, or north thereof, to a point 2,400 feet north of signal No. 44, the interlocking plant was electrically locked up and the position of signals Nos. 44 and 24 could not be changed and the derail could not be opened; that before the derail on the south-bound main track could be opened the towerman must first place signal No. 24 at stop position, which operation would necessarily place

signal No. 44 at caution; that after the signals were so placed another lever must be operated; that lever was first moved about four-fifths of a stroke, and then the lever was locked for a period of 2 minutes and 50 seconds before the stroke could be completed and the derail opened. Defendant called a number of witnesses who testified that signal No. 24 could be seen from the position where the fireman sits in an engine approaching Bay Shore yards from San Francisco at all times after the engine reached a point 1,150 feet north of the south portal of tunnel No. 4. A number of photographs were offered and received in evidence which defendant's witnesses testified were taken from the fireman's side of an engine at various points within tunnel No. 4 between the south portal of that tunnel and a point 1,150 feet north of the south portal thereof. Signal No. 24 appears on each of the photographs. In some of the photographs that signal appears to be on the fireman's side of the south-bound track. In others it appears to be in the middle of the track. But without dispute both signals 24 and 44 were on the engineer's side. All witnesses who testified upon that matter so testified. That also was shown by the map put in evidence by the defendant. A map of the tracks of the Bay Shore yards was also received in evidence. The map shows that extending south from the south portal of tunnel No. 4 the railroad tracks curve towards the east. The curve in the tracks probably accounts for the fact that from various points within tunnel No. 4 signal No. 24 appears, as shown by the photographs, to be on the fireman's side or as in some cases in the middle of the track. Defendant also offered evidence tending to show that a train such as the one in question, moving at the rate of speed that the train was going before the emergency brakes were applied, could be stopped within a distance of from 1,100 to 1,200 feet. The evidence shows that the last train to pass through tunnel No. 4 came from the south and went north. That train passed through the tunnel a few minutes before the accident. A number of defendant's witnesses testified that

a train going north through the tunnel tended to clear the smoke from the south end thereof; that the movement of the train would create a vacuum behind it and thus pull the smoke with it. A number of rules of the defendant company were received in evidence. Some of the rules were offered by the plaintiff and others by the defendant. Among the rules so offered and received are the following:

"Enginemen must keep a look-out and note all signals."

"Firemen are subordinate to enginemen."

"If necessary to change any route for which signals have been cleared for an approaching train or engine, switches must not be changed or signals cleared for any conflicting route until the train or engine for which the signals were first cleared is stopped."

"The engineman and fireman must, when practicable, communicate to each other by its name the indication of all signals affecting the movement of their train."

"Interlocking signals govern the use of the routes of an interlocking plant, and, as to movements within home signal limits, except that interlocking plants operated by trainmen or at interlocking plants where signalmen are not employed continuously, their indications supersede the superiority of trains, but do not dispense with the use or the observance of other signals whenever and wherever they may be required."

The foregoing summary does not reflect all of the evidence offered at the trial, but will give a sufficient background for our discussion of the questions of law which are presented for determination on this appeal.

The defendant requested the court below to direct the jury to bring in a verdict of no cause of action. The request was refused. Such refusal is assigned as error. The assignment is not argued. From what has been said it is to be observed that there is a direct conflict in the evidence as to the position of signal No. 44. Accepting defendant's contention that the interlocking plant operated as defendant's witnesses testified it did, as the train approached the north portal of tunnel No. 4, both plaintiff and the engineer, John Weir, testified that signal No. 44 showed clear. Defendant offered evidence tending to show that the mechanism of the interlocking plant was of such

character and so operated that signal No. 44 must have indicated caution and that train No. 78 should be prepared to stop at signal No. 24. Courts may not take judicial notice of the mechanism or workings of an interlocking system such as that described by defendant and maintained at Bay Shore. The court was not, as a matter of law, bound to instruct the jury that the interlocking system would work as defendant's witnesses had testified it should, nor was the jury bound to believe the testimony with respect thereto.

There is likewise a conflict in the testimony of the witnesses as to whether or not signal No. 24 could have been seen by the plaintiff in time for him to have informed the engineer of its position and to have enabled the engineer to stop the train and thus to have avoided the accident. The plaintiff testified that because of smoke and fog his vision was limited on the lookout for the signal, while defendant offered testimony tending to show factors that if operating at the time would clear the tunnel and tend to extend the distance the signal could be seen. The conditions may have been different. This was for the jury.

Appellant has submitted an elaborate, extensive, and carefully prepared brief. Eleven of the divisions or topical phases of the brief are devoted to what appellant designates as appellant's "theory of the case."

Two of the topical divisions of appellant's brief are devoted to argument directed to the questions involved in the lower court's refusal to give instructions requested by the defendant. Six of the topical divisions are devoted to argument and citations upon matters relating to objections to instructions given by the court. Instructions numbered 11½, 12, 13, and 14 are those against which appellant's attack is directed, and one division is directed to the claim that the verdict and judgment awarded excessive damages to plaintiff. Under the arrangement above referred to, appellant has grouped the topics discussed without any specific reference to particular assignments of error as such.

Appellant's theory of how the accident happened, the derailment of the train, the working of the interlocking plant, the duties of the defendant's servants in so far as they relate to the facts, are reflected in the summary of the facts heretofore in this opinion set forth and in so far as the facts disclose the theory were matters for the jury.

Appellant presents a theory, by counsel referred to as "primary negligence," as distinguished from contributory negligence. A major portion of appellant's brief is devoted to the discussion of the theory. We have given careful attention and consideration to all the argument and cases submitted, and after such attention and consideration we are forced to the conclusion that there is no substantial basis either in the decided cases or on principle for the suggested distinction. Nor are we able to make application of the claimed theory to the case now before us. That a party is entitled to have his case submitted to the jury on the theory of his evidence as well as upon the theory of the whole evidence is recognized without argument. *Morgan* v. *Bingham Stage Lines Co.*, 75 Utah 87, and cases cited at page 105, 283 P. 160, 166. Each party to a lawsuit is entitled to advocate his theory and on submission to the jury is entitled to a submission of it upon his theory, and have the jury instructed on his theory, and the law as applicable to such theory; but such right does not include therein the right to develop a theory of law for the particular case. The jury must be instructed on the law as it is, and applicable to the circumstances and theories as they are presented by the evidence. The facts and theories of cases differ with the cases; the law does not. The law as it is at the time is to be applied by the court to the theories and issues through the instructions to the jury. *Martineau* v. *Hanson*, 47 Utah 549, 155 P. 432.

Why inject into the law of negligence such qualifying adjectives as "primary," "secondary," "tertiary," etc., or other qualifying words to disturb or upset the well-under-

stood meaning so long applied to the word "negligence." "Negligence" has been defined as the failure ■
to do what a reasonably prudent person would do
under the circumstainces, or to do what a reasonably prudent person would not have done under the circumstances, of the situation. Negligence is a resultant either from an act in violation of a duty or in failing to act when duty under the exigencies of the occasion requires one to act. There are *primary duties;* duties of first importance, fundamental duties, primary responsibilities, and other characterized obligations; but "negligence" as a matter of law does not admit of such qualifications or numercial arrangement of its elements. We have such expressions as "any negligence," "joint negligence," "no negligence," "concurring negligence," "contributory negligence," "sole negligence," better expressed as "sole proximate cause of the injury"; but "primary negligence" is so far an unrecognized child of irresponsible parentage that should not be encouraged into the family of definite relations to disturb the peace, order, and harmony of a well-recognized household.

The federal statute (Federal Employers' Liability
Act, § 3 [45 USCA § 53]) provides: ■

"The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

This provision forces the jury to weigh the blame attributable to the respective parites where both are at fault but neither solely responsible for the injury. Because the statute has imposed upon the jury the duty of determining proportions does not justify a modification of meaning of well-recognized legal terms. Under the statute (section 53, 45 USCA), "The damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee"; therefore, the responsibility rests upon the jury to weigh the blame. That question may not be opened

or touched by the court, neither by instructions before verdict without invading the province of the jury, nor after verdict without violating the secrecy and sanctity of the jury's deliberations. In every verdict involving contributory negligence under the federal act the proportion the verdict is diminished based upon the amount of negligence attributable to the employee is locked within the secret deliberations of the jury room.

There are a few instances in the cases where the words "primary negligence" are found. We cannot extract from the cases the meaning contended for by counsel for appellant. In the case of *Missouri, K. & T. Ry. Co.* v. *Lenahan,* 68 Okl. 73, 171 P. 455, at page 458, the court says:

"Under the doctrine announced in some of these cases, notwithstanding the absence of *primary negligence* on the part of the company, the negligence of Lenahan would not prevent the plaintiff from recovering if it be shown that engineer Hotchkiss, by the exercise of reasonable care and prudence, might have avoided the consequences of the negligence of the deceased after discovering his peril." (Italics added.)

In the case of *Davis* v. *Kennedy,* 266 U. S. 147, at page 148, 45 S. Ct. 33, 69 L. Ed. 212, the expression used by Mr. Justice Holmes is:

"His duty was primary and he had physical control of No. 4, and was managing its course."

Again Mr. Justice Holmes, speaking for the court in the case of *Frese* v. *Chicago, B. & Q. R. R. Co.,* 263 U. S. 1, at page 3, 44 S. Ct. 1, 2, 68 L. Ed. 131, uses this language:

"Whatever may have been the practice he could not escape this duty, and it would be a perversion of the Employers' Liability Act (April 22, 1908, c. 149, § 3; 35 Stat. 65, 66 [45 USCA § 53]) to hold that he could recover for an injury primarily due to his failure to act as required, on the ground that possibly the injury might have been prevented if his subordinate had done more."

In *Wilson* v. *Chicago, B. & Q. R. R. Co.,* 317 Mo. 647, 296 S. W. 1017, at page 1023, we find:

"It is strenuously contended by defendant that the duty imposed upon the deceased fireman, Wilson, to prevent his train leaving the passing track at Laclede before the arrival of train No. third 72, was 'primary, entire, and separate from and equal to, and independent of, that resting on any other employee'; that deceased manifestly violated such duty, the violation of which duty constituted direct or primary negligence on his part; and that such primary negligence of deceased must, as a matter of law, be deemed the sole proximate (and not a contributing) cause of his death."

At this time we need not further pursue the verbal discussion. The application to be made of the principles in the cases cited will be discussed when we come to the question of the instructions refused and those given by the trial court. The defendant requested the court to give the following instruction to the jury:

"(9) (As first given to the jury.) You are instructed that it is the duty of a fireman on a locomotive hauling a passenger train to keep a lookout for signals affecting the movement of the train and to communicate their position to the engineer by their name; and in this connection if you believe from the evidence that the position of the arms of the home signal located near the east portal of tunnel No. 4 indicated stop, and that plaintiff while yet in the tunnel could by the exercise of reasonable care have seen the position of that signal indicating stop in time to have communicated its position to the engineer and could have known in time that the engineer was running against said signal and could have acted so that the train could have been stopped, and you find that the accident would not have occurred but for such failure on the part of the fireman, then the court instructs you that plaintiff was guilty of *primary* negligence and cannot recover in this action and your verdict should be in favor of the defendant 'no cause of action.'"

The italicized word "primary" was omitted from the instruction as given.

The trial court then withdrew instruction No. 9 as read and substituted the following instruction:

"9. You are instructed that it is the duty of a fireman on a locomotive hauling a passenger train to keep a lookout for signals affecting the movement of the train, *and when practicable* to communicate their position to the engineer by their name; and in this connection if you

believe from the evidence that the position of the arms on the home signal located near the east portal of tunnel No. 4 indicated stop, and that plaintiff while yet in the tunnel could by the exercise of reasonable care have seen the position of that signal indicating stop in time to have communicated its position to the engineer, and could have known in time that the engineer was running against said signal, and could have acted so that the train could have been stopped *but failed so to act,* and you further find that the accident would not have occurred but for such failure, *if any there was,* on the part of the fireman, then the court instructs you that plaintiff was guilty of negligence that contributed to said accident, *and if you find that such negligence, if any there was, on the part of the fireman was the sole proximate cause of said accident, and that no negligence on the part of the engineer or on the part of any employee of defendant contributed thereto, then the plaintiff can recover nothing, but on the other hand, if you find that said negligence, if any there was, on the part of the fireman was only a part of the proximate cause of said accident, and that the negligence of the engineer or that negligence on the part of another employee or other employees of defendant contributed thereto, then you cannot find wholly in favor of the defendant on this issue, but you must find on this issue in favor of the plaintiff, and diminish such damages as you may award him, if any, according to the rule therefor later given in these instructions."* Italics indicate parts added in instruction given in addition to defendant's request.

Defendant excepted to the refusal of the court to give instruction No. 9 as requested and first read to the jury, and also excepted to the giving of the request in its amended form. Errors are assigned thereon.

This case is brought under the provisions of the Federal Employers' Liability Act (45 USCA §§ 51-59), and the meaning and application of the act as interpreted by the Supreme Court of the United States is final and controlling as to that matter. It is the duty of this court to ascertain the construction which that court has given the act and rule accordingly.

The cases cited and relied upon by appellant, and which appellant claims support appellant's theory of so-called "primary negligence" and charge the trial court with error in refusing the instructions requested are of such character

that the rule to be deduced therefrom is not difficult. The difficulty arises, and the differences are developed, when it comes to making application of the rule to the facts and correctly interpreting the principles through the instruction to the jury so that the jury may be guided, through the instructions, to co-ordinate the facts with the instructions and to arrive at a fair interpretation of both and render a fair and just verdict.

Counsel for appellant maintains that under the Federal Employers' Liability Act as interpreted by the National Supreme Court

"It is not required in order to defeat recovery that the injured employe *alone* be *solely* guilty of the *single* act of negligence, which proximately caused the accident, but rather, to the contrary, 9, 10 even though other employes be involved and *equally* guilty of violating the same rule, if the injured employe likewise violated that rule and so was guilty of the single or sole act of negligence which produced the accident, he does not minimize his *personal responsibility* by showing that he had companions equally at fault, but who did no more than violate the same rule."

It is only natural to think vigorously in favor of the cause we espouse and to make application of principles as favorably as possible in support of the cause we maintain. The above quotation is illustrative:

"It is not required in order to defeat recovery that the injured employe *alone* be *solely* guilty of the single act of negligence which proximately caused the accident."

Whether or not that statement may be taken as correct when properly qualified we need not now discuss; it is sufficient, however, in relation thereto to say that if "the injured employee *alone* be *solely* guilty of the single act of negligence which proximately caused the accident he cannot recover." Neither may he recover if he fails to prove negligence on the part of the employer which negligence was the proximate cause of the injury. Under the Federal Employers' Liability Act, "contributory negligence shall not bar a recovery," so that it is only necessary either as a mat-

ter of law or instruction to the jury to draw distinctions between that negligence that contributed to the injury and that negligence which is the sole proximate cause of the injury. Each is separately defined and without comparisons. Upon proof of negligence on the part of the employer under the act, the employee is entitled to recover unless: (1) His act of negligence was the sole proximate cause of the injury either personally or by the joint negligence of himself and another or others, when the negligence of either may be regarded as the sole proximate cause; and (2) his act of negligence contributed to the injury, under which situation "the damages shall be diminished by the jury in proportion to the amount of negligence attributable" to the employee. *Western & A. R. R.* v. *Lochridge,* 39 Ga. App. 246, 146 S. E. 776; *Great Northern Ry. Co.* v. *Wiles,* 240 U. S. 444, at page 448, 36 S. Ct. 406, 408, 60 L. Ed. 732:

"There is no justification for a camparison of negligences or the apportioning of their effect."

*Davis* v. *Kennedy,* 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212:

"It was the personal duty of the engineer positively to ascertain whether the other train had passed. His duty was primary as he had physical control of No. 4 and was managing its course."

In the case of *Unadilla Valley Ry. Co.* v. *Caldine,* 278 U. S. 139, 49 S. Ct. 91, 73 L. Ed. 224, the syllabus correctly reflects the facts and the result of the opinion:

"A train arrived at a station where, by the express, printed rule of the railroad company, it must be held to await the passing of another train moving upon the same track in the opposite direction. The station agent had been informed by telephone that the other train was coming, and there was some evidence that he told the motorman of the first train, but he did not tell the conductor. Disobeying the rule, the conductor ordered the motorman to proceed and, the latter obeying, a collision resulted by which the conductor was killed. In an action brought by his administrator against the railroad company under the Employers' Liability Act, held that the plaintiff could not be heard to say that the accident was due in part to the negligence of the motor-

man in obeying the conductor's command; nor could it be attributed in part to the station master's neglect to warn the conductor."

Other and additional similar cases might be cited. All of them support the rule that the employee, under the Federal Employers' Liability Act, may not recover where his act is the sole proximate cause of the injury, and the fact that other employees may also have been negligent either individually or jointly does not take the case out of the operation of the rule. *Unadilla Valley Ry Co.* v. *Dibble* (C. C. A.) 31 F. (2d) 239. The principle is stated and the construction placed upon the Employers' Liability Act in the case of *Illinois Central R. R. Co.* v. *Skaggs,* 240 U. S. 66, 36 S. Ct. 249, 250, 60 L. Ed. 528.

Plaintiff was the head brakeman. He with the rear brakeman was engaged in a switching operation. They had set two cars out on an adjoining track. The rear brakeman was on the side nearer the car set out. Plaintiff asked the rear brakeman if the car was clear. The rear brakeman informed him that it was. Plaintiff was standing on the track not more than a car length from the cars set out. It was dark. Plaintiff got on the engine, rode up to the switch, threw the switch, stepped on the corner of the tender and signaled the engineer to back, and was caught between the tender and the end of the standing car. In affirming a judgment for plaintiff Mr. Justice Hughes of the Supreme Court of the United States, among other things said:

"It is contended that the state court erred in permitting a recovery under the Federal statute for the reason that the injury resulted from Skaggs' own act, or from an act in which he participated. The company, it is said, 'cannot be negligent to an employee whose failure of duty and neglect produced the dangerous condition.' It may be taken for granted that the statute does not contemplate a recovery by an employee for the consequences of action exclusively his own; that is, where his injury does not result in whole or in part from the negligence of any of the officers, agents or employees of the employing carrier, or by reason of any defect or insufficiency due to its negligence, in its property or equipment. [April 22, 1908,] 35 Stat. at L. 65, chap. 149, Comp. Stat. 1913, § 8657. But, on the other hand,

it cannot be said that there can be no recovery simply because the injured employee participated in the act which caused the injury. The inquiry must be whether there is neglect on the part of the employing carrier, and, if the injury to one employee resulted 'in whole or in part' from the negligence of any of its other employees, it is liable under the express terms of the act. That is, the statute abolished the fellow-servant rule. If the injury was due to the neglect of a co-employee in the performance of his duty, that neglect must be attributed to the employer; and if the injured employee was himself guilty of negligence contributing to the injury, the statute expressly provides that it 'shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.' "

An employee of a railroad company engaged in interstate commerce sustaining an injury as a result of knowingly and willfully disregarding an order or rule of his employer, such employee is completely barred from recovery notwithstanding other employees participated in the act of disregarding such order or rule of the employer. The provisions of the Federal Employers' Liability Act under such circumstances do not permit the jury to diminish the amount of recovery—the injured employee is precluded from recovery.

If, in the instant case, signal No. 44 was in fact set at caution, and there had been no conflict as to that matter, when No. 78 was approaching, and if plaintiff as the train passed had seen said signal in that position and had indicated to the engineer that it was at clear, or had failed to inform the engineer that the signal was at caution if he had observed it to be in that position, the doctrine contended for by the defendant would apply, and the cases cited would be controlling. Such is not the case. The position of signal No. 44 is an issue of fact in the case. There seems to be no dispute as to the position of signal No. 24 when train No. 78 approached the east portal of the tunnel. The issue there is whether or not the plaintiff exercised the care and caution of an ordinarily prudent person, having in mind all the circumstances and responsibilities of the occasion.

Requested instruction No. 9 was objectional, in that it directed the jury to find for the defendant if the plaintiff was negligent in the particulars mentioned without regard to whether his negligence was contributory, requiring a diminution of damages, or whether or not his conduct constituted a willful disregard of his known duty. That negligence which defeats recovery under the Federal Employers' Liability Act, as distinguished from that negligence which has the effect of diminishing the amount of recovery, is discussed and distinguished, as we believe, in the following cases: *Illinois Central Ry. Co.* v. *Skaggs*, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528; *Grand Trunk Western R. Co.* v. *Lindsay*, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168, and *Union Pacific R. Co.* v. *Hadley*, 246 U. S. 331, 38 S. Ct. 318, 62 L. Ed. 751, and *Davis* v. *Payne*, 108 Or. 72, 216 P. 195.

In the case of *Grand Trunk Western R. Co.* v. *Lindsay* (C. C. A.) 201 F. 836, the following is instructive (quoting from (C. C. A.) 201 F. 844)

"If, under the Employers' Liability Act, plaintiff's negligence, contributing with defendant's negligence to the production of the injury, does not defeat the cause of action, but only lessens the damages, and if the cause of action is established by showing that the injury resulted 'in whole or in part' from defendant's negligence, the statute would be nullified by calling plaintiff's act the proximate cause, and then defeating him, when he could not be defeated by calling his act contributory negligence. For his act was the same act, by whatever name it be called. It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act."

The trial court properly refused to give defendant's requested instruction No. 9 in the form requested. This also applies to requested instructions Nos. 6, 7, 9A, 10A, 11, 11A, 12, and 19. We think instruction No. 9 as given by the court furnished no cause for complaint.

Defendant excepted to instruction No. 11½ as given by the court. It reads:

"You are instructed that if you find from the evidence that the signal at the westerly end of tunned No. 4 indicated clear at the time that the train passed said signal, and that thereafter, while the train was proceeding from said signal through said tunnel No. ■ 4, the person in charge of the tower interlocking plant carelessly and negligently caused a stop signal to be shown near the easterly portal of said tunnel No. 4, when the train was so near said stop signal that it would be impossible, in the exercise of ordinary care, to stop said train, and opened the derail so that the engineer was not able to bring said train to a stop, and that by reason thereof said train was derailed and thrown from the track, then your verdict should be for the plaintiff, and in that event plaintiff would not be guilty of contributory negligence, and you should award plaintiff damages as defined in other instructions without any diminution for contributory negligence."

Defendant urges the instruction is without support in the evidence. The evidence shows that a towerman operated the interlocking plant at Bay Shore at the time in question. He was not called as a witness. A witness for defendant testified, as heretofore indicated, that he was an employee of defendant; that he was familiar with the operation of the interlocking plant; that when signal No. 24 was at stop, signal No. 44 of necessity must be at caution, and when signal No. 44 was at caution, signal No. 24 must be at stop; and that it was impossible to so operate the plant as to change either signal No. 44 or No. 24 or to open the derail, while a train was passing over the track or block between those two signals, or after the time a train had entered the approach circuit to signal No. 44 which circuit extended for a distance of 2,400 feet north of signal No. 44.

The plaintiff testified that when No. 78 was within 700 or 800 feet of signal No. 44 and nearer than that he was unable to see No. 44 because of the curve of the track and the length and height of the engine boiler, it was at clear, and the engineer testified that signal No. 44 was at clear when they passed that signal. All seem to agree that signal No. 24 was at stop and the derail was open when the train, No. 78, emerged from tunnel No. 4.

If the jury believed that signal No. 44 was at clear as testified to by the plaintiff and on behalf of the plaintiff by the engineer, and if they further believed that the interlocking plant was so constructed that when signal No. 24 was placed at stop, signal No. 44 of necessity must show caution, they were at liberty to reach the conclusion that the signals had been changed by the towerman after No. 78 passed signal No. 44. In such case the jury would of necessity disbelieve defendant's witnesses as to that part of their testimony that the signals could not be changed by the towerman while the train was moving over the track between a point 2,400 feet north of signal No. 44 and the derail switch. The jury was not bound to believe defendant's witnesses in this respect. Defendant must fail in its contention that the evidence did not justify the giving of instruction No. 11½.

There remains for consideration two additional instructions, No. 13 and No. 14, given by the court, and to the giving of which defendant excepted. Before we take up the discussion of these two instructions, we shall notice again briefly what counsel refer to as "defendant's theory" of the case. As heretofore indicated, much argument is devoted to an attempt to distinguish between what is designated as "primary negligence" as distinguished from "contributory negligence" as applied to the defense set up by defendant, and the alleged disregard of the court of defendant's theory.

Appellant also contends that the defense was not one of contributory negligence; but that the answer of defendant presented only a denial of plaintiff's affirmative allegations. The argument submitted, however, earnestly contends that plaintiff was negligent, and that his alleged negligence was the sole proximate cause of the accident, and of his resulting injury.

As we understand the meaning of the Federal Employers' Liability Act as interpreted by the federal cases, relating to the diminution of damages because of contributory negligence, and the abrogation of the fellow-servant rule, it is: (1) Before plaintiff may be entitled to recover at all he

must establish by a preponderance of the evidence defendant's negligence. This has always been the rule. (2) If plaintiff has been guilty of contributory negligence, his recovery shall not be barred, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to him. And (3) If plaintiff's negligence was the sole proximate cause of his injury, plaintiff cannot recover, or if he knowingly and willfully violated a rule the violation of which was the proximate cause of the injury. The evidence may come from either or both sides to the controversy.

Appellant must accept one or more of the three situations· out of the issues made up by the pleadings as to defenses: (1) Denial; (2) plaintiff's contributory negligence; or (3) plaintiff's negligence constituting the sole proximate cause.

Defendant's amended answer contains the following allegation:

"Further answering said complaint, and as its separate and additional defense thereto, this defendant alleges that the accident to plaintiff was caused by said plaintiff's own negligent acts, conduct and omissions in this, that under the Rules of the company it ▮▮▮ was plaintiff's duty as such fireman to keep a constant and vigilant lookout to note the position of all signals, including those at each end of said tunnel, and to communicate to the engineer by its name the position and indication of all signals affecting the movement of said train, and defendant alleges that plaintiff negligently failed to observe and/or to communicate to the engineer the fact that the signals at each end of said tunnel indicated that said track was occupied and/or that said derail was open; and this defendant alleges that the negligence of plaintiff as aforesaid *primarily and proximately* caused the derailment of the engine on which he was working."

"Further answering said complaint, and as its separate and additional defense thereto, this defendant alleges that the accident to plaintiff was proximately contributed to by plaintiff's own negligent acts, conduct and omissions."

We are of the opinion the allegations of defendant's answer, even under defendant's theory, presented both issues, that of contributory negligence, and that of sole proxi-

mate cause. A given act may, depending upon the circumstances, be either the sole proximate cause of or it may be only a contributory cause to, an injury. Whether it is the sole proximate cause or only a contributory cause is, on a conflict of the evidence or upon reasonable inferences to be deduced therefrom, a question for the jury. Neither by brief nor argument is it cliamed by appellant that the evidence as to defendant's negligence was insufficient to require a submission of the case to the jury, nor that the evidence was of such character as to require the case to be withheld from the jury, nor to justify the court to declare as a matter of law that the plaintiff was guilty of such negligence as to preclude his right to have the matter submitted to the jury.

The trial court instructed the jury (instructions No. 13 and No. 14) as follows:

13. "You are instructed that it is claimed by the defendant that before the train passed the signal or semaphore near the westerly portal of said tunnel No. 4 that the signal of said semaphore indicated that the said train should proceed with caution and be prepared to stop before reaching the signal or semaphore at the easterly portal of said tunnel, and that plaintiff was negligent in failing to observe the signal and communicate the same to the engineer. As to said defense you are instructed that the burden of proving contributory negligence is upon the defendant, and that before you could find the plaintiff guilty of contributory negligence regarding said matter defendent would have to show, by a preponderance of the evidence, that said signal near the westerly portal of said tunnel had been set at caution, (if it was so set) a sufficient length of time before said train arrived at said signal for the fireman, in the exercise of ordinary care, to have observed the same, and that it was his duty to, and that he could in the exercise of ordinary care, have observed the same, and that it was his duty to communicate the position of said signal to the engineer, and if defendant has failed to establish all of these matters, by a preponderance of the evidence, then the plaintiff would not have been guilty of contributory negligence in that regard."

14. "One of the defenses set up by the defendant is that the plaintiff was guilty of contributory negligence which proximately contributed to the accident in question in this: That before the train reached said

semaphore near the westerly portal of said tunnel No. 4 the signals on said semaphore indicated that the train should proceed with caution and be prepared to stop before reaching the semaphore near the easterly portal of said tunnel, and that the plaintiff negligently failed to observe the correct position of said signal and negligently failed to communicate to the engineer the same. In determining whether or not the plaintiff was guilty of contributory negligence in that regard you should take into consideration the nature and condition of the track as shown by the evidence, the work that the fireman was required to perform in connection with his work on said engine, the location of said semaphore, and in this connection you are instructed that it is undisputed that said semaphore was upon the engineer's side of said track. You should also consider the opportunities that said fireman, in the performance of his duties, would have to see and observe the signals on said semaphore, and all other evidence that has been introduced that might aid you in determining that question and in that connection you are instructed that the fireman would have a right to assume, until he learned the contrary, that the engineer would see and observe said signal and operate his engine in accordance with the signal displayed, and if you believe from the evidence that the plaintiff, in the performance of his duties on said engine, acted as an ordinarily prudent fireman under the same or similar circumstances, then he would not be guilty of contributory negligence in any matter pertaining to said signal.

"Defendant further contends that plaintiff was guilty of contributory negligence which proximately contributed to the accident in question in that he failed to exercise ordinary care to observe the signal at the easterly portal of said tunnel, and to communicate to the engineer said signal. In determining whether or not the plaintiff was guilty of contributory negligence in that regard you should take into consideration the nature and condition of the tunnel at said time as to visibility as shown by the evidence, the work that the fireman was required to perform in connection with his duties on said engine, the location of said semaphore, and in this connection you are instructed that it is undisputed that said semaphore was upon the engineer's side of said track. You should also consider the opportunities that said fireman, in the performance of his duties, would have to see and observe the signal on said semaphore, and all other evidence that has been introduced that might aid you in determining that question. And in that connection you are instructed that the fireman would have a right to assume, until he learned to the contrary, that the engineer would see and observe said signal and operate his engine in accordance with the signal displayed, and if you believe from the evidence that the plaintiff in the performance of his duties

on said engine acted as an ordinarily prudent fireman under the same or similar circumstances, then he would not be guilty of contributory negligence in any matter pertaining to said signal."

Appellant's assignments of error break up the instructions to which exceptions are taken into phrases of such brevity that taken alone such detached portions fail to reflect the meaning of the instructions when read as a whole. In argument appellant particularly specifies the following as prejudicial portions of instruction No. 14 (we will consider instruction No. 13 later) :

"And in this connection you are instructed that *the fireman would have a right to assume, until he learned to the contrary, that the engineer would see and observe said signal* and operate his engine in accordance with the signal displayed."

"And if you believe from the evidence that the plaintiff, in the performance of his duties on said engine acted *as an ordinarily prudent fireman* under the *same* or similar circumstances, (would have acted) then he would not be guilty of contributory negligence in any matter pertaining to said signal."

Without referring to specific parts of the instructions 13 and 14, this discussion will in part apply to both. It is to be observed that instructions 13 and 14 were dealing with a specific situation and not with general principles. It is clear that instruction No. 13 had reference to the distant signal at semaphore No. 44, and the circumstances as the train approached and passed it; and that instruction No. 14 had reference to the home signal at semaphore No. 24 when the train arrived at that point. From instruction No. 14, its limitation to the particular situation of the signal is emphasized by the recurrence of the expression "in that regard" and "in any matter pertaining to said signal."

One of the rules of the company required that enginemen and firemen must, when practicable, communicate to each other by its name the indications of all signals affecting the movement of their train. At the time in question it was the duty of the plaintiff, when his other duties did not engage his attention, to keep a constant and vigilant lookout

for signals. Plaintiff's testimony indicates that he fully understood his duty and responsibility as to such matters.

As the train upon which plaintiff was serving approached semaphore No. 44, the track made a long sweeping right-hand curve. Plaintiff was on the left-hand side of the engine. The signal was on the engineer's side, the right-hand side. The plaintiff testified he was unable to see the signal until the train was within 600 to 800 feet of the signal, and then only for a moment, when it again passed from view because the length of the boiler intercepted or cut off the view. If plaintiff saw signal No. 44 at clear when he was 600 to 800 feet away from it as he says he did, and was unable to see it when his train passed it, clearly he was not bound under the rule to call to the engineer concerning the position of a signal the actual position of which he could not know. *St. Louis & S. F. R. Co.* v. *Bishard* (C. C. A.) 147 F. 496, at page 499. When last seen by him it was at clear. He knew the engineer, who had control of the movement of the train, was in a position to see and know the position of the signal. Under the circumstances the engineer having the position of control and superior knowledge, the fireman would have a right to assume, until he learned to the contrary, that the engineer would see and observe said signal and operate his engine in accordance with the signal displayed, and which the engineer testified was in the clear. The presumption that the master is not negligent is applicable to the master's servant, the engineer.

It would be a strained construction, if not a perversion of the language of rule 34, to require a fireman to leave his duties, and at the risk of being charged with being the sole proximate cause or of contributing to a possible injury, to observe and communicate the position of every signal to the engineer regardless of being otherwise engaged in the performance of duty. What should be said concerning the situation if the same burden under the same or similar circumstances were placed upon the engineer to so com-

municate to the fireman the position of all signals on the fireman's side when the engineer could not see them? If the fireman called clear when the signal was at caution or at stop, the engineer would not be required to further investigate. He could rely on the report. No one would have the temerity to suggest that the engineer should at his peril leave his seat or otherwise interrupt the duties in which he would of necessity be engaged to advise the fireman. If the engineer in the instant case had called either clear or caution, it could not have affected the fireman either in his duties or in the matter of control of the movement of the train. The engineer of necessity has control of his engine, and though the rule requires that, *"The engineman and fireman must, when practicable, communicate to each other by its name the indication of all signals affecting the movement of their train,"* it would not be practicable for him to abandon for a moment the control of his engine to ascertain the position of a signal on the fireman's side if the engineer could not see it. The engineer could rely upon the fireman's call, and if the fireman did not call, the engineer being in the position of superior responsibility and duty, he should call. If the fireman called to the engineer "clear," "caution," or other indication of a signal, the engineer would be entitled to assume that the fireman had correctly called the signal until he learned the contrary, and the engineer would not be required to investigate. By the same token *the fireman knowing* the engineer was in position to observe the signal and know its position as the train passed it when the fireman from his position was not, surely the fireman would have a right to assume the engineer did, not only what the rule required, but that because of his superior position and greater responsibility he acted in accordance wtih the information before him and under the rule each must, when practicable, communicate to the other the signal observed. We have no disposition to minimize the importance nor to indicate anything that might tend toward a relaxation of its enforcement.

If signal No. 44 was at clear when train No. 78 passed it, as the jury, under the evidence, might find, then the engineer and fireman would be entitled to assume that signal No. 24 would be in the position required under ▪ the system of operation, from the position of signal No. 44 as they observed it, and to so assume until they or either of them learned to the contrary.

Passing for the moment to the time when the train approached signal No. 24 near the east (south) portal of tunnel No. 4, the question is presented as to whether or not signal No. 24 was seen by the fireman as soon as it should have been. The fireman testified that he was ▪▪ on the lookout. He also testified that he was unable to see signal No. 24 sooner because of fog and smoke. Witnesses for the defendant testified as to measurements and observations, and submitted photographs tending to show that if the fireman had been on the lookout as he testified, that he could and should have seen signal No. 24 sooner. The tests, measurements, and photographs were taken at a different time. Whether or not the visibility was the same does not appear, except there was no attempt to show there was fog or smoke as at the time testified to by the fireman. There was thereby brought about sufficient conflict in the evidence to justify the submission of that particular matter to the jury. Under certain conditions and circumstances a certain signal may be seen at a given time and a greater distance than at another. Where the evidence required the submission of the question of alleged contributory negligence to the jury under the particular circumstances, what better guide could the court give to the jury to aid the jury in determining the issue in that regard than the standard given, viz., that of the ordinarily prudent or cautious man under the circumstances and exigencies of the occasion—the watchfulness, caution, and foresight of a reasonably careful, prudent person under the circumstances?

Recurring again to the instructions under consideration and the rules of the company. The instructions give, when

read as a whole, full force and effect to the rules, nor do they imply that the fireman may neglect his duty or escape his own responsibility because the engineer had a like responsibility or duty to perform under the rule. The rule exists at all times; its operation and observance by its terms are dependent upon circumstances. When the circumstances put the fireman in such position that he may not, without impairing the purpose of the rule, function under it, in the particular instance, the fireman is then justified in relying upon the superior position and better opportunity of the engineer to observe and know, especially when the fireman was in position reasonably to know that the engineer is in such position. A situation quite applicable is found in relation to the two brakemen in the case of *Illinois Central R. R. Co.* v. *Skaggs*, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528. The fireman's duty is measured by the rules in so far as the observance of them can be made applicable and consistent with the performance of his other duties. No rule has so far been devised which is so nearly perfect as to make it manifest that the exercise of ordinary and prudent intelligence may be dispensed with. There may be circumstances where the letter of the rule would be disastrous.

Appellant also complains of part of instruction 25-28 No. 13, especially that part reading:

"Defendant would have to show, by a preponderance of the evidence, that said signal near the westerly portal of said tunnel had been set at caution, (if it was so set) a sufficient length of time before said train arrived at said signal for the fireman, in the exercise of ordinary care, to have observed the same."

It is argued that "there is always a presumption in these negligence cases that the defendant was not negligent, and that the burden rests on the one charging negligence to prove it." We are fully in accord with counsel's position upon that matter. The same principle also applies that the plaintiff was not presumed to be contributorily negligent and that the burden rests on the one charging contributory

negligence to prove it. Contributory negligence is an affirmative defense and must be pleaded to be available as a defense, and he who pleads an affirmative defense has the burden of proving it unless plaintiff's evidence relieves him of that burden.

There was no error in the giving of instructions Nos. 13 or 14.

This brings us to the question of whether or not the verdict for $30,000 was excessive. The plaintiff suffered burns from escaping steam when the engine turned over. He testified that the steam pipes broke, blowing superheated steam all over him. That he was burnt in the face, all over his neck, ears, arms, hands, and both buttocks, and his legs all the way down. He was taken to a hospital and remained in the hospital from July 4th until the 14th day of November, 1928. That he was in bed from the day of the accident till some time in September. That he suffered terrible pain. The scars from some of the burns were exhibited to the court and jury. That the scars around his ankles are tender and beginning to tighten up. That as he stands he keeps pulling his feet or legs up and down —keeping up a pacing movement or continuous stepping. That he could not stand still and keep the weight on both feet at the same time. That when he stands he suffers pain in portions of his feet and legs. That he walks with what people call a wobbly gait. That he does not suffer pain when sitting or lying down. At times when he retires at night he will start twitching, then all of a sudden it will stop. That his condition has not changed in six months. That his condition is getting worse instead of better. That before the injury he earned from $175 to $280 per month. That he could not now do the work of a fireman or any other kind of work with which he is acquainted. That he suffers in the cold weather. That at the time of the injury he was in line for promotion from the position of fireman to that of engineer, which pays better.

As against the testimony of the plaintiff and medical witnesses produced by him, the defendant presented medical evidence, tending to show that plaintiff could walk normally; moving pictures were taken of plaintiff and introduced in evidence tending to show that at times plaintiff walked normally. Some medical men expressed the suspicion that plaintiff's constant shifting movement and irregular and peculiar walk were simulated and that plaintiff was malingering.

All these matters were submitted to the court and jury. The lower court and the jury had opportunity to see and observe the plaintiff, and are therefore in a better position to determine the nature and extent of plaintiff's injuries than we are.

There is nothing in the record from which this court can conclude that there was any bias, passion, or prejudice existing on the part of the jury; in fact, nothing except the size of the verdict itself that could be considered by the court. Is the size of the verdict itself sufficient to show that there must have been some bias, prejudice, passion, misunderstanding, or misapprehension that contributed to influence the jury in fixing the amount of their verdict, or is the verdict excessive and sufficiently so that this court may say it is unjust? This court is not wholly powerless to grant relief if it should indubitably appear that the jurors erred in their judgment as to the amount of damages. Great latitude is allowed to a jury in assessing damages for personal injuries. Under the Constitution of Utah:

"The right of action to recover damages for injuries resulting in death, shall never be abrogated, and the amount, recoverable shall not be subject to any statutory limitation, except in cases where compensation for injuries resulting in death is provided for by law." Article 16, § 5, as amended (see Laws 1919 [Sp. Sess.] p. 45).

No limitation has been fixed by statute fixing a limit that might be recovered for personal injuries not resulting in death.

Looking at the whole record and the evidence, we cannot say that the verdict is excessive. To do so would be to substitute our judgment for that of those who had better opportunity to know than we.

Finding no error, the judgment should be affirmed. Such is the order. Respondent to recover costs.

FOLLAND and EPHRAIM HANSON, JJ., concur.

STRAUP, Chief Justice (concurring).

I concur. With respect to paragraphs 9, 13, and 14 of the court's charge and complained of by the appellant. I wish to add this: The substance of paragraph 9 is that it was the duty of the plaintiff as a fireman to keep a lookout for signals affecting the movement of the train and when practicable to communicate the position of the signals to the engineer; that if, in the discharge of such duty, the plaintiff, as the train approached the signal near the east portal of tunnel No. 4 (signal 44), in the exercise of reasonable care could have discovered that the signal indicated stop and communicated such fact to the engineer in time to have stopped the train and avoided the accident, and if the plaintiff failed to do so, and the accident would not have occurred but for such failure, the plaintiff was guilty of negligence, and *if such negligence was the sole proximate cause of the accident, he could not recover;* but if the proximate cause of the accident was the result of the combined negligence of the plaintiff and of the engineer or another employee or employees of the defendant, then the plaintiff for such reason was not barred recovery but was not entitled to recover the full amount of damages sustained by him, the jury being required to diminish such damages, as elsewhere charged, in proportion to the amount of negligence attributable to the plaintiff. In other words, if on the hypotheses stated, the jury found the plaintiff guilty of negligence, the court left it to them to determine whether such negligence was the sole proximate cause of the accident, or whether the proximate cause thereof was the result of the

combined negligence of the plaintiff and of the engineer or other employee or employees of the defendant.

The effect of the verdict as rendered by the jury was that the plaintiff was not guilty of any negligence and thus the jury in no particular diminished the amount of damages to which they found the plaintiff was entitled. That on the record the jury could have so found is not seriously disputed. What, in such particular, is contended by the appellant is that if the facts were found as stated by the hypotheses, the failure of the plaintiff to discover signal 44 at stop or caution (if such was the position of the signal) and communicate the position to the engineer was not only negligence on the part of the plaintiff directly contributing to the cause of the accident, but in law must be regarded as the sole proximate cause of the accident barring recovery, regardless of whether there was any negligence of the defendant or of the engineer or other employee or employees of the defendant concurring and combining with the negligence of the plaintiff as the direct cause of the accident. But when the jury found, as by their verdict they evidently did, that the assumed facts stated in the hypotheses did not exist, and hence the plaintiff not guilty of any negligence which as a proximate cause contributed to the accident, the point urged by the appellant becomes moot, for that the point is pertinent only in the event the facts assumed by the hypotheses were found to exist. Had the jury found the plaintiff guilty of negligence and to that extent diminished the amount of damages sustained by him, then the point, as to whether such negligence should in law be regarded as the sole proximate cause of the accident and bar recovery, or whether such negligence in law or in fact was only a contributing cause combining and concurring with the negligence of the defendant or of its employee or employees, would be relevant. But the jury in effect having found there was no such negligence on the part of the plaintiff, the point is irrelevant.

Further as to this: It is familiar doctrine that a particular

portion of a charge complained of must be considered in connection with the whole charge bearing on the same subject or matter. By pargraph 6 of the charge the court further charged:

"You are instructed that a railroad company has the legal right to make such rules and regulations for the conduct of its employees while engaged in its service as in its judgment are reasonable and proper to protect its employees from injury by accident, and all employees while engaged in such service with a knowledge of such rules are bound to follow and obey them, and if an injury is sustained by an employee by an accident caused solely by his violation of a rule promulgated for his safety, he cannot recover damages from the railroad company."

By the rules of the company put in evidence, it, among other things, was provided that "enginemen must keep a lookout and note all signals" and that "the enginemen and firemen must, when practicable, communicate to each other by its name the indication of all signals affecting the movement of their trains." By paragraph 9 it was expressly stated that it was the duty of the plaintiff, as fireman, to keep a lookout for signals affecting the movement of trains; by paragraph 12 that it was the duty of both the engineer and the fireman to keep a lookout for signals, "and in this instance it was the duty of each when practicable to call the signals seen to the other"; by paragraph 11 the jury again were directed that if the failure of the plaintiff to observe the signals and to communicate their position to the engineer *was the sole proximate cause of the accident,* the plaintiff could not recover.

When thus the rules of the defendant put in evidence, the court charging in accordance therewith that it was the duty of the plaintiff to keep a lookout to discover the position of signals and communicate such position to the engineer, that if an injury was sustained by an employee by an accident *caused solely by his violation of a rule of the company promulgated for his safety he could not recover,* are considered in connection with paragraph 9, it would seem that the theory or theories of the defendant in the particulars

complained of were fairly put before the jury. Upon the record and by their verdict it is evident the jury did not find the existence of the facts upon which the theory or theories of the defendant were predicated. The plaintiff and the engineer having testified that signal 44 as No. 4 tunnel was approached by them, and as they passed the signal, indicated a clearance, the jury could find that such was the position of the signal. If the jury did so find, then there was no negligence either on behalf of the engineer or the fireman in proceeding forward as they did. The switchman of the apricot train having testified that as such train approached the main line and about to cross over and finding a stop signal forbidding such crossing and the engineer of such train whistling the towerman for a signal permitting him to cross over and the towerman giving him a clearance signal for such purpose and derailing the main line on which the passenger train was approaching, and striking the derail while the apricot train was still in the act of crossing the main line, the jury could find that such signal to the apricot train to cross over was given by the towerman after the passenger train had passed signal 44 and was passing through tunnel No. 4, and not affording sufficient time for the engineer of the passenger train to stop and avoid the accident after discovering the stop signal on the main line, and the jury further finding, as testified to by the plaintiff and the engineer, that the stop signal was discovered *by them at the same time and the emergency immediately* applied and everything done to stop the train, a finding that the plaintiff was guilty of negligence would not have been justified. The undisputed evidence is that all the signals in question were on the engineer's side. Testimony also was given to show that because of a fog, and smoke in the tunnel, and of other conditions, stop signal 24 was not sooner discovered.

Thus, from all the circumstances, the jury could have found that the plaintiff was not guilty of negligence in failing to sooner discover signal 24. Certainly his failure

to sooner discover it could not have been pronounced negligence as matter of law. The question clearly was one of fact for the jury. It was so submitted to them with the direction that if they found the plaintiff guilty of negligence and that such negligence was the sole proximate cause of the accident, the plaintiff could not recover. I think no error was committed by the court in doing so.

Now, as to the portion of the charge of paragraph 13 relating to burden of proof of contributory negligence with respect to the postion of semaphore or signal 44 as the pessenger train approached and passed such semaphore and entered tunnel No. 4. It is claimed that the court, as to the pleaded affirmative and separate defense of negligence of the plaintiff upon the ground that he failed to discover the position of such semaphore at caution, erroneously put such burden of proof on the defendant. It is apparent that if the semaphore indicated clearance and was not at caution, no negligence could be predicated on the part of the plaintiff in not discovering that the signal was at caution, for he could not discover what did not exist. Again, the charge of the court in such particular must be considered in view of the pleadings and of the evidence. By the complaint several acts of negligence on the part of the defendant are alleged. With respect to semaphore or signal 44, it in substance was alleged that "the defendant was negligent in that the person in charge of the tower of the semaphore system caused to be shown a green light on said semaphore at the westerly portal of tunnel No. 4 (signal 44), indicating that the block ahead was clear for the passenger train to proceed"; and well knowing that the train was proceeding through the tunnel, those in charge of the tower "negligently permitted a freight train to pass over and go upon the crossover tracks and pass immediately in front of the passenger train a short distance from the easterly portal of the tunnel, and well knowing that the passenger train would, if not derailed, strike against the freight train going over the crossover tracks," and if the defendant and its agents had not

indicated at the west portal of the tunnel that the block ahead was clear instead of indicating that there was danger in proceeding through the tunnel, and if proper signals had been given indicating that other trains were about to or were crossing over the crossover tracks, the engineer in charge of the passenger train could have stopped and avoided the accident. It further was alleged that it was the duty of the engineer to observe the position of semaphore or signal 44, and if it did not show green or a clearance, it was his duty to stop, and if he did not do so he well knew there was danger of a collision, and that in such event the accident resulted through the combined negligence of the defendant and of the engineer.

The defendant denied the alleged negligence and as a separate and an affirmative defense pleaded that the accident to the plaintiff "was caused by his own negligence,, in that, by the rules of the company he was required to keep a lookout and note the position of all signals, including those at both ends of tunnel No. 4, and to communicate to the engineer the position of such signals and the defendant alleges that the plaintiff negligently failed to observe and/or to communicate to the engineer the fact that the signals at each end of said tunnel indicated that such track was occupied and/or that said derail was open; and this defendant alleges that the negligence of plaintiff aforesaid primarily and proximately caused the derailment of the engine on which he was working."

It thus is seen that the plaintiff, as to signal 44, alleged that the defendant through the towerman negligently indicated such signal as a clearance and that the block ahead was clear; the defendant, upon which it based its affirmative defense of negligence on behalf of plaintiff in such particular, that the signals at each end of the tunnel indicated that the track ahead was occupied, the main line derailed, and that the plaintiff negligently failed to discover such position and communicate it to the engineer. By the evidence on behalf of the plaintiff it was shown signal 44 was

green, indicating a clearance, and that the passenger train could safely proceed through the block ahead. The defendant, by evidence as to the mechanism of the tower system, sought to establish, and claimed to have established, that if semaphore or signal 24 was red and indicated stop, then of necessity signal 44, when the passenger train approached and passed it, indicated caution, warning the train operatives to be prepared to stop anywhere within the block ahead. By the charge the court fully submitted to the jury the respective issues as shown by the pleadings and by the evidence. With respect thereto the court, in other portions of the charge, charged the jury "that the burden of proof as to any disputed or controverted fact rested upon the party who alleges the fact, and in each instance where either party to this action alleges the existence of any fact and such allegation is denied by the opposing party, the burden of proof rests upon the party alleging such fact to prove his allegation by a preponderance of the evidence." The court further also charged that "negligence is never presumed and the burden rests upon the party alleging negligence to prove such allegation by a preponderance of all the evidence."

Thus, to entitle the plaintiff to recover on the alleged negligence with respect to the manner in which semaphore or signal 44 was indicated, he was required to show that the semaphore indicated green or a clearance indicating that the passenger train without obstruction could safely proceed through the block ahead. If he failed to establish such fact, or if he failed to establish it by a fair preponderance of the evidence, or if the evidence with respect thereto was evenly balanced, the plaintiff was not entitled to recover on the ground of such alleged negligence. But in such case, he would not fail because he himself was guilty of negligence. He would fail because he had not established such alleged negligence against the defendant. The plaintiff, however, gave evidence to establish such negligence. In so doing no evidence was adduced by him tending to show that he was guilty of negligence in not discovering the true posi-

tion of semaphore or signal 44. Certainly upon the evidence adduced by him the defendant was not entitled to a directed verdict on the ground of negligence of the plaintiff. Since no evidence was given by him tending to show that semaphore or signal 44 was at caution, before the defendant could claim support of its alleged separate and affirmative defense that the plaintiff was guilty of negligence in not discovering semaphore 44 at caution, the defendant was required to show that the semaphore was at caution, and unless the defendant showed that the semaphore was in such position, the claim that the plaintiff was guilty of negligence in not discovering the semaphore in such position falls to the ground. In other words, no such claimed negligence appearing in plaintiff's evidence, how could the defendant support its separate and affirmative defense in such particular without showing that semaphore 44 was at caution?

I thus think the court correctly charged as was done in paragraph 13 that the burden of proving contributory negligence was upon the defendant, and that, in view of the pleadings and of the evidence, the court correctly charged that to find the plaintiff guilty of contributory negligence *in failing to discover that semaphore or signal 44 was at caution*, the defendant was required to establish such fact by a fair preponderance of the evidence, for, as heretofore observed, unless the defendant did establish such fact, there was no basis for and no evidence to support the alleged claim that the plaintiff was guilty of negligence in not discovering signal 44 at caution.

In this connection it must be observed, and it is not disputed, that in this jurisdiction, as in the federal courts, the rule is that the burden of proof is upon the defendant to show facts constituting negligence on the part of the plaintiff, unless the evidence adduced by him tends to show such negligence. So when it is considered that the plaintiff to recover was required by a preponderance of the evidence to show facts constituting negligence as against the defendant, and the defendant to show negligence against the plaintiff

was required by a preponderance of the evidence to show facts constituting such negligence, there is no inconsistency in the charge referred to. Failure of the defendant to show contributory negligence would no more tend to show negligence on its part than failure of the plaintiff to show negligence on the part of the defendant would tend to show negligence on his part. And the plaintiff, in the particular referred to, having given evidence to show negligence on the part of the defendant without any evidence tending to show negligence on his part, the defendant to establish its affirmative pleaded defense that the plaintiff was guilty of negligence was required to show facts constituting such negligence. Any other conclusion is in discord with the admitted rule in this jurisdiction that the burden of proof is upon the defendant to show negligence or contributory negligence on behalf of the plaintiff.

Now as to the complaint made of the portion of paragraph 14 wherein the court, in connection with other things, stated "that the fireman would have the right to assume until he learned to the contrary that the engineer would see and observe such signal (signal 44 indisputably on the engineer's side of the track) and operate his engine in accordance with the signal displayed." Such language also is used with respect to signal 24, also indisputably on the engineer's side of the track. The paragraph in which such language appears is fully set forth in the prevailing opinion. Therein the court charged various matters which the jury could consider in determining the question of contributory negligence. In that connection the complained of language is used. Because of such language, the contention is made that the plaintiff thereby was himself relieved from exercising due care, as he was required to do, to discover the position of semaphores or signals on the engineer's side of the track as well as on the fireman's side. When the whole paragraph is considered, I do not think such contention tenable. It certainly is not tenable when, in connection with paragraph 14, other paragraphs of the charge bearing on the subject

are considered, especially paragraph 6 heretofore referred to, paragraph 9, and paragraph 12, where the jury were expressly instructed that it was the duty of the fireman as well as of the engineer to keep a lookout for signals affecting the movement of trains. There is no presumption of negligence. On the contrary and independently of evidence, every one whose conduct is drawn in question is presumed to have exercised due care. In the first instance, and in the absence of notice or knowledge to the contrary, an employee may assume that the master will and had exercised due care with respect to duties imposed upon him and owing the employee, and that such duties will be and have been discharged by the master with reasonable care. 5 Elliott on Railroads (3d Ed.) § 2712, n. 660, and 4 Elliott on Railroads, § 1881, n. 154. Of course, such assumption does not imply that the employee himself is relieved from exercising due care for his own safety, nor because of such assumption is he relieved from so doing. Because the court charged that the plaintiff had the right to assume that the engineer in effect would or had exercised due care, did not imply that the plaintiff was himself relieved from exercising due care in discovering the position of signals, for with respect thereto, the court charged that the plaintiff was in duty bound to observe a lookout to discover the position of signals affecting the movement of trains and to exercise reasonable care in such particular, and if on the evidence the jury found "that the plaintiff in the performance of his duties on said engine, acted as an ordinary prudent fireman under the same or similar circumstances, then he would not be guilty of contributory negligence in any matter pertaining to said signal," signal 44.

Let it further be noticed that under the rules of the company that "enginemen must keep a lookout and note all signals" and that "firemen are subordinate to enginemen," the whole duty to discover the position of semaphores or signals was not cast on the plaintiff. Each, when practicable, was required to communicate to the other the indica-

tion of the signals. The court so charged. Under the rules the engineer was a superior servant. It was he who operated, managed, and controlled the engine. Under the rules, and under the federal act which abolished the doctrine of fellow servant, he, as to the plaintiff, was a vice principal, for whose acts in the discharge of his duties the company was responsible. He was in position to command, the plaintiff to obey. Just as the plaintiff, without notice or knowledge to the contrary, could assume that the principal had or would exercise due care, so could the plaintiff assume that the engineer would or had exercised due care. The doctrine here, as to semaphore 44, was particularly applicable for the reason, and as indicated in the prevailing opinion, that such semaphore being on the engineer's side of the track giving the engineer a better opportunity to ascertain the position of the semaphore, and because of the curve in the track the view of the semaphore by the plaintiff being obstructed, except for a brief space, and only "momentarily" visible to him, and when seen by him, the semaphore, as he testified, indicating a clearance. The fuel used in the engine was oil. The fireman on his seat was required to operate the valves and to regulate them according to the way the engineer worked the throttle and was required to move the valve as the engineer moved the throttle and also to set and regulate the atomizer and "to sand the engine." On his side of the engine and on his seat he observed lookouts for signals and for persons or obstructions upon or near the track, etc. Looking to discover the position of semaphore 44, more than he did discover, required him to leave his seat and go on the engineer's side. That, because of his work and of the conditions, was not practicable. Thus, under the circumstances, the plaintiff had the right to assume that the engineer would do what the engineer testified was done by him in observing the position of the semaphore, and as the engineer continued to operate the engine without slacking the speed, the plaintiff had the right to assume that the engineer had observed signal 44 and that it indi-

cated a clearance to proceed. If the plaintiff had no such right, then he would have no right to rely on any communication made by the engineer that he noted the indication of the semaphore and that it was in the clear, but was required to leave his seat, go on the engineer's side, and himself observe and discover what the semaphore indicated. No such requirement, to relieve the plaintiff from a charge of negligence, was exacted by the rule of the company nor by any principle of law applicable to the case.

I thus think no error was committed by the court with respect to the charge complained of.

ELIAS HANSEN, Justice (dissenting).

In my opinion the court below commited errors in its instructions to the jury which require a reversal of the judgment appealed from. The principal issues raised by the pleadings and the evidence relate to the position of the arms of signal or semaphore No. 44 at the time the engine upon which the plaintiff was riding approached and passed that signal immediately before the accident. In his complaint plaintiff charged that defendant was negligent in that it caused signal No. 44 to show that the engine upon which he was riding could proceed with safety into and through tunnel No. 4 when such signal should have indicated that the engine must proceed with caution and be perpared to stop at signal No. 24. In its answer defendant denied negligence on its part. It also alleged that at the time in question signal No. 44 indicated that the train upon which plaintiff was riding should proceed with caution into and through tunnel No. 4, and be prepared to stop at signal No. 24; that the accident which caused plaintiff's injury was due to his own negligence in failing to obey the rules of the defendant company, in that he failed to keep a constant and vigilant lookout, and failed to note the position of all signals, including signal No. 44, and likewise failed to communicate to the engineer by its name the position and indication of that signal. There is a conflict in the evidence as to the position

of the arms of signal No. 44 as train No. 78 approached and passed that signal. Plaintiff and the engineer, Weir, both testified that at the time in question that signal showed clear. Defendant offered evidence which tended to show that in view of the fact that signal No. 24 was admittedly at stop it was impossible, because of the mechanism of the interlocking plant, for signal No. 44 to have been at clear. The evidence, without conflict, shows that the semaphores which were in use by the defendant company were so constructed that they may be placed in one of three positions, viz., clear, caution, or stop. There is no evidence in this case which shows, or tends to show, that signal No. 44 was at stop. Therefore under the evidence in this case the jury was called upon to determine whether signal No. 44 was at clear as testified to by plaintiff and Engineer Weir, or at caution as indicated by the testimony of the defendant's witnesses with respect to the mechanism of the interlocking plant which defendant maintained at the Bay Shore yards. The parties are all agreed that in view of the fact that signal No. 24 was at stop and the derail open, signal No. 44 should have been at caution. It is an elementary principle of law that negligence will not be presumed in the absence of proof of its existence. That the burden was cast upon the plaintiff to prove, by a preponderance of the evidence, that signal No. 44 was at clear and not at caution before the jury was at liberty to find it was at clear is equally elementary. In the absence of proof of the position of the arms of that signal, or in the event the evidence upon that issue was equally divided, the jury was bound to find it was at caution. The court below, in effect, so informed the jury in some of its instructions, but in instruction No. 13 the jury was told that:

"You are instructed that it is claimed by the defendant that before the train passed the signal or semaphore near the westerly portal of said tunnel No. 4 that the signal of said semaphore indicated that the said train should proceed with caution and be prepared to stop before reaching the signal or semaphore at the easterly portal of said tunnel, and that plaintiff was negligent in failing to observe the signal and

communicate the same to the engineer. As to said defense you are instructed that the burden of proving contributory negligence is upon the defendant, and that before you could find the plaintiff guilty of contributory negligence regarding said matter defendant would have to show, by a preponderance of the evidence, that said signal near the westerly portal of said tunnel had been set at caution (if it was so set) a sufficient length of time before said train arrived at said signal for the fireman, in the exercise of ordinary care, to have observed the same, and that it was his duty to, and that he could in the exercise of ordinary care, have observed the same, and that it was his duty to communicate the position of said signal to the engineer, and if defendant has failed to establish all of these matters, by a preponderance of the evidence, then the plaintiff would not have been guilty of contributory negligence in that regard."

Defendant took exceptions to various parts of the foregoing instruction. As one of its defenses defendant alleged that plaintiff was negligent in failing to keep a proper lookout. Upon that issue the burden was cast upon the defendant to establish, by a preponderance of the evidence, its allegations in such respect. Instruction No. 13 commingled the burden of defendant to prove, by a preponderance of the evidence, that plaintiff failed to keep a proper lookout and observe the position of signal No. 44 with the burden of the plaintiff to prove, by a preponderance of the evidence, that signal No. 44 was not at caution for a sufficient length of time before the train arrived for the fireman to have observed it in that position. That instruction conveys the idea that the burden was on the defendant not only to show that plaintiff failed to keep a proper lookout and observe the position of signal No. 44, but also that the burden was on the defendant to prove, by a preponderance of the evidence, that signal No. 44 was at caution. With respect to the latter proposition the instruction was, in my opinion, clearly erroneous. The jury was not at liberty to find from the same evidence for one purpose that signal No. 44 was at caution, and for another purpose at clear. It was either in the one or the other position for all purposes of this case. Of necessity the position of the arms of signal No. 44 must be determined by the application of one rule of law and not

by two conflicting rules of law. If the jury should attempt to apply two conflicting rules of law as guides in determining the position of the arms of signal No. 44, they might well have been confused and misled in their deliberations. The only way that defendant could disprove plaintiff's claim that the signal was at clear was to offer proof that it was in some other position, viz., at caution. The fact that defendant (in order to ward off plaintiff's claim that signal No. 44 indicated clear) alleged and offered evidence tending to show that signal No. 44 was at caution did not shift the burden of proof on that issue. *New Orleans & N. E. R. Co.* v. *Harris,* 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167; *Schuyler* v. *Southern Pac. Co.,* 37 Utah 612, 109 P. 1025; Id., 37 Utah 581, 109 P. 548; *Strickland* v. *Capital City Mills,* 70 S. C. 211, 49 S. E. 478. There is also merit to appellant's contention that the latter part of instruction No. 13 is susceptible of the construction that before the jury could find that plaintiff was negligent it was incumbent upon the defendant to show, by a preponderance of the evidence, that it was plaintiff's duty to keep a lookout for the position of signal No. 44, and, likewise, to show that plaintiff owed a duty to communicate the position of said signal to the engineer. While plaintiff contends that when the whole of instruction No. 13 is read no part thereof is open to the construction contended for by the defendant, I am impressed with the view that the instruction is, to say the least, so involved that it might well have confused the jury with respect to the necessity of the defendant to prove what were the duties of the plaintiff. Under the evidence in this case the plaintiff, as a matter of law, owed a duty to keep a lookout for signals and to communicate their position to the engineer. By instructing the jury in instruction No. 13 that the burden was on the defendant to prove, by a preponderance of the evidence, that signal No. 44 was at caution, the trial court placed an undue burden upon the defendant as to its defense of contributory negligence.

Defendant excepted to the giving of various parts of in-

struction No. 14. Among the parts to which defendant so excepted are: "If you believe from the evidence that the plaintiff, in the performance of his duites on said engine, acted as an ordinarily prudent fireman under the same or similar circumstances, then he would not be guilty of contributory negligence in any matter pertaining to said signal." The objection urged against the foregoing parts of instruction No. 14 are, in my opinion, well taken. One of the rules of the defendant company required that the engineer and fireman must, when practicable, communicate to each other by name the indication of all signals affecting the movement of their train. At the time in question it was the duty of the plaintiff, when his other duties did not engage his attention, to keep a constant and vigilant lookout for signals affecting the movement of his train and report the position of the signals to the engineer. Plaintiff makes no claim that at the time in question his other duties required his attention. His testimony is to the contrary. That plaintiff fully understood his duties in such respect is evidenced by his testimony wherein he stated that he was "conscious of the fact that we were hauling other members of the crew and a trainload of passengers, women and children, and the safety of those passengers is the first concern of the engineer and fireman. There is nothing that is of as much importance to an engineer and fireman as the safety of the passengers they are hauling and we know the responsibility that is behind us. When the signals are so the fireman can see them the most important thing for him to do is to observe the position of signals which govern the movement of the train. It is on that account that the fireman looks to see the position of the signals when practicable"; that when not occupied with other duties it was the duty of the fireman to observe the signals and call their position to the attention of the engineer.

Defendant also excepted to that part of instruction No. 14 wherein the court instructed the jury that: "And in that connection you are instructed that the fireman would have

a right to assume, until he learned to the contrary, that the engineer would see and observe said signal and operate his engine in accordance with the signal displayed," and also the following language in the same instruction, "and in that connection you are instructed that the fireman would have a right to assume, until he learned to the contrary, that the engineer would see and observe said signal (No. 24) and operate his engine in accordance with the signal displayed."

To inform the jury that plaintiff had a right to assume, until he learned to the contrary, that the engineer would see and observe signals and operate his engine in accordance with the signals displayed, was, in effect, to inform the jury that plaintiff was not required to keep a lookout for signals or inform the engineer of their position until he learned that the engineer was not performing his duty of observing the signals and operating his engine accordingly. That it was competent for the defendant company to promulgate rules for the safety of its employees, for the preservation of its property, and for the protection of its passengers, cannot be doubted; that each employee alike owed to his employer a duty to obey such rules is equally clear. There would be little, if any, purpose in an employer making rules for the guidance of its employees if each employee is at liberty to disregard such rules upon the pretext that he assumed other employees would perform their duty, and therefore it would be unnecessary for him to obey the rules. That the observance of a rule requiring a fireman, when not occupied with other duties, to keep a lookout for signals affecting the movement of his train, and when practicable communicate to the engineer the position of such signals, tends to decrease the risk of an accident, is likewise self-evident. When both the engineer and fireman are keeping a lookout for signals and calling to each other the position of such signals, there is less likelihood of a fatal mistake than when the engineer alone is performing that duty. If, as stated in that part of the instruction now under review, the fireman may rely upon the engineer to perform that

duty until he learns to the contrary, it may well then be too late to avoid an impending danger. Under the rules of the defendant company it was the personal and absolute duty of the plaintiff to keep a lookout for signals and report their position to the engineer at all times when his other duties did not prevent him from doing so even though the engineer was apparently performing a similar duty. A failure of the fireman to perform that duty constituted negligence on his part. His duty in such respect was measured by the rules of the defendant comapny and not by what an ordinarily prudent fireman might do under similar circumstances. *Missouri, K. & T. Ry. Co.* v. *Collier* (C. C. A.) 157 F. 347; *Wolsey,* v. *L. S. & M. S. Railroad Company,* 33 Ohio St. 227; *Atchison, T. & S. F. R. Co.* v. *Reesman* (C. C. A.) 60 F. 370, 23 L. R. A. 768. To the same effect are a number of the cases cited by the defendant in support of the so-called doctrine of "primary negligence," which cases are collected in the prevailing opinion. By instructing the jury that plaintiff had a right to assume, until he learned to the contrary, that the engineer would see and observe signals and operate his engine in accordance with the signals displayed, the defendant was in great part deprived of its defense of contributory negligence. And by informing the jury that plaintiff was required to use only such care as would be used by an ordinarily prudent fireman under the same or similar circumstances the jury was, in effect, told that the rules of the defendant company were not necessarily controlling upon plaintiff. The errors committed in instructions Nos. 13 and 14 are, in my opinion, such as to require a reversal of the judgment, nor may it be said that the instructions complained of were cured by other instructions. When two instructions are inconsistent, it is impossible to tell whether the jury in its deliberations followed the correct or the incorrect statement of the law, and as a result the judgment must be reversed. *Jensen* v. *Utah Ry. Co.,* 72 Utah 366, 270 P. 349.

The judgment should be reversed, and a new trial granted.